UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────── X
ADWAR CASTING CO., LTD., a New York
Corporation,

                Plaintiff,

    -against-

STAR GEMS INC., a Georgia Corporation,
ANISH DESAI, an individual, and Does 1-20,

                Defendants.
──────────────────────────────── X

**MEMORANDUM & ORDER**
17-CV-6278(DRH)(SIL)

**APPEARANCES:**

**For Plaintiff:**
THE LAW OFFICES OF TEDD S. LEVINE, LLC
1305 Franklin Avenue, Suite 300
Garden City, New York 11530
By:    Tedd S. Levine, Esq.

**For Defendants**
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC 27101
By:    Rodrick J. Enns, Esq.

**HURLEY, Senior District Judge**:

      Plaintiff Adwar Casting ("Plaintiff" or "Adwar") commenced this action against defendants Star Gems Inc. ("Star") and Anish Desai ("Desai") (collectively "Defendants") asserting claims for copyright infringement pursuant to 17 U.S.C. §501, as well as related state law claims. Presently before the Court is Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. For the reason set forth below, the motion is granted.

# BACKGROUND

**I.     Allegations in the Complaint**

The following allegations are taken from the Complaint ("Comp.")

Adwar is a New York corporation with its principal place of business in Rockville Centre, New York. It creates, manufactures and distributes original jewelry products, which it actively markets and sells throughout the United States. (Comp. ¶¶1, 9.) Star is a Georgia corporation with its principal place of business in Georgia. It is a wholesale manufacturer and seller of jewelry products, which it sells and distributes throughout the United States and internationally. (*Id.* ¶ 2, 10, 11.) Desai is the principal shareholder and chief executive officer of Star and has his principal place of business in Georgia. As such he is responsible for all of Star's important business decisions, including what artwork is used in connection with the products Star manufactures, markets and sells. (*Id.* ¶¶ 3, 19, 20.)

In or about July 2017, Star, without Adwar's consent, copied certain of Adwar's jewelry items, specifically a ring and a pendant (referred to in the complaint and herein as "Artwork"), and began marketing and selling jewelry products using the Artwork ("referred to in the complaint and herein as the "Knock-off Products"). (Comp. ¶ 12.) A substantial similarity exists between the Artworks and the Knock-off Products. (*Id.* ¶ 14.) Prior to Star marketing and selling the Knock-off Products, Adwar, as owner of the Artwork registered it with the United States Copyright office and said registration was in full force and effect at the time of the relevant events. (*Id.* ¶ 13.) Star was not licensed or authorized to use any of the Artwork. (*Id.* ¶¶ 15-17.) Adwar has lost income as a result of Star's activities using the Artwork. (*Id.* ¶ 18.)

# DISCUSSION

## I. Standard – Rule 12(b)(2) Motion

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996). Courts may rely on additional materials outside the pleading when ruling on a 12(b)(2) motion. *Minnie Rose LLC v. Yu*, 169 F. sup.3d 504, 510 (S.D.N.Y. 2016). Where, as here, the parties have not yet conducted discovery, a plaintiff may defeat a defendant's Rule 12(b)(2) motion "by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence." *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 285 (E.D.N.Y.2005). Moreover, given the early stage of the proceedings here, the Court must view the pleadings in the light most favorable to the plaintiff, *see Sills v. The Ronald Reagan Presidential Found., Inc.,* 2009 WL 1490852, *5 (S.D.N.Y. May 27, 2009), and when evidence is presented, "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party," *A.I. Trade Fin., Inc. v. Petra Bank,* 989 F.2d 76, 80 (2d Cir. 1993). A court need not, however, "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) *and Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)). Thus, the plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.' " *Art Assure Ltd., LLC v. Artmentum GmbH*, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini* 148 F.3d at 185); *accord Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (A plaintiff "must

make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone.") (internal quotation marks omitted).

## II. Personal Jurisdiction Generally

In a diversity case, a federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Due process requires that the defendant have certain "minimum contacts" with the forum state; such minimum contacts assure that a defendant "will only be subjected to the jurisdiction of a court where the maintenance of a lawsuit does not offend traditional notions of fair play and substantial justice." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) (internal quotation marks omitted). In assessing a defendant's contact with the forum state for due process purposes, "the crucial question is whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum Sate, thus invoking the benefits and protections of its laws," and therefore "should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242-43 (2d Cir. 2007). (internal citations and quotation marks omitted).

In New York, courts may exercise either general or specific jurisdiction over defendants.

### A. General Jurisdiction

"In New York, general jurisdiction is governed by N.Y. CPLR § 301. Section 301 preserves the common law notion that a court may exercise general jurisdiction over a nondomiciliary defendant if that defendant is engaged in such a continuous and systematic course of doing business here to warrant a finding of its presence in this jurisdiction." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015); *see Sonera Holding B.V.*

*v. Cukorova Holding, A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). "Defendant's 'continuous activity of some sort[ ] within a state ... is not enough to support the demand that the corporation be amendable to suits unrelated to that activity.' Rather, a corporation's 'affiliations with the State' must be 'so continuous and systematic' as to render it essentially at home in the forum State." *Mali v. British Airways*, 2018 WL 3329858, at *5 (S.D.N.Y., July 6, 2018) (quoting *Goodyear Dunlop Tires Ops. v. Brown*, 564 U.S. 915, 919, 927 (2011). The Supreme Court has made clear that, consistent with due process, a corporate defendant is subject to general jurisdiction only in its (i) place of incorporation and (ii) principal place of business, unless (iii) the "exceptional case" exists in which the foreign defendant's contacts with the forum state is "so substantial and of such a nature as to render the corporation 'at home' in" the forum state. *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015), *aff'd,* 882 F.3d 333 (2d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 761, n.19 (2014). If general jurisdiction exists, courts in New York can adjudicate *all* claims against an individual or a corporation, even those unrelated to its contacts with the state. *Sonera Holding*, 750 F.3d at 225.

    B.    **Specific Jurisdiction**

Specific jurisdiction in New York is governed by CPLR § 302. The existence of specific jurisdiction "depends on an affiliation between the forum [state] and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citations omitted); *see Powell v. Monarch Recovery Management, Inc.*, 2016 WL 8711210, at *6 (E.D.N.Y. 2016) (New York's long-arm statute requires that the claim asserted arise from the activity asserted). New York's "long-arm" statute, allows for specific jurisdiction over non-domiciliaries " who, in person or through an agent . . .

(i) transacts business within the state or contracts anywhere to supply goods or services in the state, (ii) commits a tortious act within the state . . . [or] (iii) commits a tortious act without the state causing injury to person or property within the state . . ." if the claim arises from those transactions. N.Y. CPLR ¶ 302.

### III. The Parties' Contentions.

In their opening memorandum, Defendants first argue that general jurisdiction does not exist as Star is not incorporated in New York and does not maintain its principal place of business here. Further, general jurisdiction does not exist over Desai as he is domiciled in Georgia, was not served in New York and has not consented to jurisdiction here. Turning to specific jurisdiction, Defendants point out that there are no allegations in the complaint that any of the acts with respect to the "Knock-off Products" occurred in New York, i.e. that they were sold, advertised or offered in New York or to any New York resident.

In response, Plaintiff's limit their jurisdictional argument to specific jurisdiction under N.Y. CPLR 302(a)(3)(iii) which, in relevant part, provides for personal jurisdiction over a person who "commits a tortious act without the state causing injury to person or property within the state . . . ." Relying pricipally upon the decision in *Penguin Group (USA) Inc. v. Am. Buddha,* 16 N.Y.3d 295 (2011), they argue that the situs of the injury in this case is New York as Star "retrieved the images of the Ring and the [Pendent] from Adwar's website and digitally down loaded them to Star's computer," reproduced the Artwork, "and publicly displayed such images on its Facebook page which is linked to its website offering its customers the ability to freely access such works." (Pl.'s Opp. Mem. at 9-10). It further maintains that Defendants waived any object to personal jurisdiction in New York when it retrieved the images from Adwar's website,

which has a condition of use that the user consents to the exclusive jurisdiction of federal and states court in New York. (*Id*. at 13-16.)[1]

In reply, Defendants argue that Plaintiff's jurisdictional argument is not grounded in the allegations in the complaint and, in any event, the new claim does not support the exercise of personal jurisdiction. (Defs.' Reply at 1-7.) In addition, they cannot be deemed to have consented to jurisdiction in New York as the terms in the website are unenforceable under controlling New York law. (*Id*. at 8-10.)

By way of format, the Court will first address whether the allegations in the complaint are sufficient to support specific jurisdiction pursuant to CPLR 302(a)(3)(iii), the sole basis relied upon by Plaintiff. Specifically, whether the situs of the injury is this case is in New York.[2] It will then address whether Plaintiff's "new" theory supports specific jurisdiction under the foregoing CPLR provision. Finally, it will address the issue of consent to jurisdiction.

### IV. Plaintiff has not Demonstrated that Specific Jurisdiction Exists over Defendants for the Claims Asserted in the Complaint

As set forth in the complaint, the present controversy arises from Defendants' alleged marketing and selling jewelry products using Plaintiff's copyrighted designs. (Comp. ¶ 12.) Absent from the complaint are any allegations that sales causing injury occurred in New York. Rather the complaint merely alleges that Plaintiff, based in New York, "lost income and continues to lose income relating to" the alleged infringement. (Comp. ¶ 18.) However, that a New York plaintiff may have lost income does not

---

[1] Plaintiff also asserts that venue is proper in New York. However, other than a stray comment regarding a "conclusory venue allegation" (*see* Defs.' Mem. at 2), Defendant motion is not premised on improper venue and therefore the Court will not address the issue.

[2] Although Plaintiff has offered evidence as to the other requirement for the exercise of jurisdiction pursuant to CPLR 302(a)(3), *viz*. subsections (i) and (ii) (*see, e.g.,* Adwar Decl. ¶¶ 4,5, 10), neither party addresses these subsections in their memoranda and therefore neither shall the Court.

constitute "injury to person or property within the state." *See Troma Entm't Inc. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (upholding dismissal of New York based motion picture producer's copyright infringement claim for lack of personal jurisdiction and stating: "It is well settled that 'residence or domicile of the injured party within [New York] is not sufficient predicate for jurisdiction' under section 302(a)(3).") (quoting *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 236 (1980)); *accord Verragio, Ltd. v. Malakan Diamond Co.*, 2016 WL 6561384 (S.D.N.Y. Oct. 20, 2016).

Indeed, it would appear that Plaintiff does not contest the foregoing inasmuch as in opposing the current motion it has "reformulated" its copyright claim. It is to the question of whether jurisdiction exists under this reformulated claim that the Court now turns.

### V. Specific Jurisdiction Does Not Exist for Plaintiff's Reformulated Copyright Claim

In an apparent attempt to bring its copyright claim within the holding of P*enguin Group*, Plaintiff's opposition papers recast their copyright claim. Although not contained in its pleading, it is now alleged that Star "retrieved the images" of the two products at issue "from Adwar's website and digitally downloaded them to its computer." It then "reproduced the Artwork, derivative versions of the Artwork, and publicly displayed such images on its Facebook page which is linked to its website." (Pl.'s Opp. Mem. at 4.) In support of this position it is claimed that "Adwar has been and continues to be damaged as a result of customers and potential customers of Adwar being encouraged by Star Gems to download Adwar's original jewelry designs from Adwar's catalog and Star Gems' system to produce unauthorized products using such works." (Adwar Declar. ¶

11.) For the reasons set forth below, the Court holds that personal jurisdiction does not exist under this recast theory of liability.

In *Penguin Group*, the Second Circuit certified the following question to the New York Court of Appeals: "In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y.C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" 609 F.3d 30, 32 (2d Cir. 2001). The New York Court of Appeals, however, "narrow[ed] and reformulate[d] the certified question to read: 'In copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?'" 16 N.Y.3d 295, 301-02 (2011). "In answer to this reformulated question and under the circumstance of [the] case," the New York Court of Appeals concluded "it is the location of the copyright holder." *Id.* at 302.

In reaching this result, the court was persuaded that the convergence of two factors -- the role of the internet in the case and the multifaceted nature of rights granted to copyright holders -- persuaded it that the injury is in-state when a printed literary work is uploaded without permission onto the Internet for public access:

> [T]he role of the Internet in cases alleging that the uploading of copyrighted books distinguishes them from traditional commercial tort cases where courts generally link the injury to the place where the sales or customers are lost. The location of the infringement in online cases is of little import inasmuch as the primary aim of the infringer is to make the works available to anyone with access to an Internet connection, including computer users in New York. In addition, the injury to a New York copyright holder, while difficult to quantify, is not as remote as a purely

> indirect financial loss due to the broad spectrum of rights accorded by copyright law. The concurrence of these two elements – the function and nature of the Internet and the diverse ownership rights employed by copyright holders situated in New York – leads us to view this case as closer to *Sybron* than *Fantis Foods*. Thus, we conclude that the alleged injury in this case occurred in New York for purposes of CPLR 302(a)(3)(ii).

16 N.Y.3d at 306-07. However, the New York Court of Appeals explicitly declined "to address whether New York copyright holder sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) in a copyright infringement case that does not allege digital piracy." *Id.* at 307.

Subsequent to *Penguin Group*, the Second Circuit in *Troma Entertainment, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215 (2d Cir. 2013), upheld the dismissal for lack of personal jurisdiction under N.Y.C.P.L.R. § 301(a)(3) of a New York Plaintiff's copyright infringement action against two non-New York domiciliaries. These two individuals entered into an agreement to broadcast two films in Germany without first acquiring a license from the New York copyright holders. The *Troma* court began its analysis with the "well-settled" principle that "residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under section 302(a)(3)." *Id*. at 218. Continuing, the court found that *Penguin* was not controlling. First, it was possible to "circumscribe" the alleged injury to a particular location and therefore the case was "more like the traditional commercial tort cases in which the place where plaintiff's business is lost or threatened exerts a significant gravitational influence on the jurisdictional analysis." *Id*. at 220. With respect to the "theory that out-of-state-infringement may harm the bundle of rights held" by the New York copyright holder, it found "it was just a theory" and did not "relieve[] intellectual property owners of the

obligation in each case to allege facts demonstrating a non speculative and direct New York based injury to its intellectual property rights." *Id*. Applying the foregoing it concluded that plaintiff's allegations that the broadcasting of unlicensed copyrighted material in Germany caused only a generalized harm to its exclusive distribution right and was too speculative to support an injury suffered in New York within the meaning of CPLR 302(a0(3). *Id*.

Here, there is no "non-speculative and direct New York based injury" to Plaintiff's intellectual property. The conclusory allegations as to the loss of its rights as a copyright holder are similar to the allegations rejected by the *Troma* court. That the images at issue were allegedly uploaded to the internet does not warrant a finding of in-state injury under *Penguin Group* as this case does not involve the type of digital piracy at issue therein.[3] *See Freeplay Music LLC v. Dave Arbogast Buick-GMS, Inc.*, 2017 WL 449913 (S.D.N.Y. Jan. 18, 2017.)[4] This case does not involve a literary work posted on the internet and freely downloadable by anyone with a computer. Indeed, there is nothing to support that the allegedly offending image on Star's facebook page is downloadable. To paraphrase the *Arbogast* court, "to hold that the posting of copyrighted material to the Internet for any purpose, such a posting a copyrighted photo to Instagram or Facebook – would automatically cause an in-state injury to a New York copyright holder" is a broad result not intended by the New York Court of Appeals.

---

[3] The evidence in this case shows only one allegedly infringing work on the internet (via Facebook) by Defendants. Plaintiff's claim that this encourages other members of the public to download Adwar's original jewelry designs is specious.

[4] The Court is aware that there are cases which have held that the situs of injury for purposes of § 302(a) is the location of the copyright owner when copyrighted material is uploaded to the internet. *E.g. Internat'l Diamond Importers, Inc. v. Med Art, Inc.*, 2017 WL 2839640 (S.D.N.Y. 2017). In this Court's view such an expansive view is not supported by the New York Court of Appeals decision in *Penguin Group* given its narrowing of the certified question and in view of the Second Circuit's decision in *Troma*.

## VI. Defendants Did Not Consent to Jurisdiction

In support of it claim for in personam jurisdiction, Adwar argues that by accessing Adwar's website, Star became bound by its terms of use which prohibits the use of materials on the site without its consent and purports to confer "exclusive jurisdiction of federal and/or state court located in New York to enforce this Agreement or for any other purpose in connection with this website . . . ." (Adwar Decl. ¶7, Ex. E) These terms and conditions are referenced on the bottom of every page of the website, in a category called "Information" and appear underneath links to the "help" page and the "Careers at Adwar" page. These terms and conditions are retrieved by clicking on "Terms and Conditions."

In *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y.) Judge Weinstein formulated a test to determine the enforceability of electronic adhesion contracts, "which test has been favorably cited and applied by federal and state trial courts." *Starke v. Squaretrade Inc.*, 2017 WL 3328236 (E.D.N.Y. Aug. 3, 2017) (citing cases). Under that test if "the importance of the details of the contract [were] obscured or minimized by the manifestation of assent expected" or "if the user's attention was not clearly drawn to material terms that would alter what a reasonable user would understand her default rights, the terms should not be enforced." *Berkson*, 97 F. Supp. 3d at 402.

Here, the mere use of the website was considered assent to the terms and conditions of use. Absent is any requirement of affirmative assent, such as the checking of a box that the user is agreeing to the terms and conditions. Additionally, the user's attention was not drawn to the referenced provision by either a change in font or type size or other mechanism such as "\*\*\*." In view of the foregoing, the alleged consent is not enforceable against Defendants.

**VII. The Request to Amend the Complaint is Denied.**

On the day that Defendants filed their reply, Plaintiff filed a letter requesting that it be allowed to amend its complaint, stating "[w]hile Plaintiff believes in good faith that its declaration (including exhibits) . . . combined with the current complaint raises the necessary allegations to demonstrate personal jurisdiction over Defendants, should the court believe that Plaintiff needs to supplement the facts in its complaint regarding such matter, Plaintiff is prepared to do so consistent with its declaration and its present pleadings." (DE 27.) Given the Court's conclusion that the complaint and declarations do not demonstrate personal jurisdiction and the absence of a proffer of any additional information by the Plaintiff, the request is denied.

## CONCLUSION

For the reasons set forth above, Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction is granted.

Dated: Central Islip, New York
       October 18, 2018                        s/ Denis R. Hurley
                                                   Denis R. Hurley
                                                   United States District Judge